**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| **CONNIE WARREN,** | **CASE NO. 6:22-CV-234-KKC** |
|     **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,** | |
|     **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on Plaintiff Connie Warren's motion for summary judgment and motion for leave to amend her motion for summary judgment. (DEs 5, 10.) Warren brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of her claim for disability insurance. The Court, having reviewed the record, will deny both motions and affirm the Acting Commissioner's decision.

**I.  Analysis**

    **A.  Motion for Leave to Amend**

As an initial matter, the Court will deny Warren's motion for leave to amend her motion for summary judgment. Although the Civil Rules of Civil Procedure state that "leave shall be freely given when justice so requires[,]" the Court may deny a motion to amend due to reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court must provide a justifying reason when denying such a motion. *Id.*

Here, Warren argues that leave to amend her motion for summary judgment should be granted in order to correct two transcriptional errors that she discovered after listening to an audio tape of the relevant administrative hearing. (DE 10 at 2.) She claims that these errors were relied upon by the Administrative Law Judge ("ALJ"), affect the credibility of the plaintiff, and leave the Court with an incorrect view of the facts of this case. (*Id.*) The Court agrees with the Defendant that these claims are unpersuasive.

Nothing in the record shows that these two transcriptional errors affected the ALJ's decision in this case. The ALJ was present at Warren's administrative hearing and heard Warren's testimony as it was given. Warren has pointed to nothing that suggests that the ALJ was not paying attention to the proceedings or was confused about the testimony being given. In fact, the ALJ's decision demonstrates that the ALJ understood the facts of the case and did not rely on the two errors that Warren takes issue with.

The first issue is that the transcript used "emotional inability" instead of "emotional lability." (DE 10-1 at 2.) The ALJ discusses Warren's emotional issues in the decision, finding that she has "an adjustment disorder, a generalized anxiety disorder, and depression." (Administrative record ("AR") at 20.) The ALJ also discussed Warren's testimony from the administrative hearing regarding her mental and emotional issues. (*Id.* at 23.) He compared this testimony to the other evidence in the record and found that the testimony on the "intensity, persistence[,] and limiting effects of [her] symptoms" were "not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*) Nothing suggests that this "emotional inability" transcriptional error played any role in the ALJ's decision.

The second issue is that the transcript recorded "[t]aking 20 sleeping pills *just on* accident" instead of "[t]aking 20 sleeping pills *is no* accident." (DE 10-1 at 3.) Warren argues that this mistake is inconsistent with the fact that she admitted to attempted suicide. The ALJ's decision makes it clear that the ALJ understood this incident to be an intentional

attempt at suicide, not an accident. (AR at 24 ("She testified that this was an intentional act[.]")).

Justice does not require the Court to grant Warren's motion for leave to amend her motion for summary judgment because her amendment would be futile. The record clearly shows that these transcriptional errors that Warren disputes played no role in the ALJ's denial of social security benefits. Accordingly, the Court will deny Warren's motion for leave to amend and turn to the merits of her summary judgment motion.

**B.    Motion for Summary Judgment**

This Court's review of the decision by the ALJ is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (citation and quotation marks omitted).  To determine whether a claimant has a compensable disability under the Social Security Act (the "Act"), the ALJ applies a five-step sequential process.  20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process).  The five steps are:

> *Step 1:*  If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:*  If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:*  If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:*  If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:*  If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." § 404.1520(a)(4).  In the first four steps of the process, the claimant bears the burden of proof.  *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)).  If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile."  *Id.* (citation and quotation marks omitted); *see also* § 404.1520(g)(1).

In denying Warren's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Act.  § 404.1520(a); *see, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Warren has not engaged in substantial gainful activity during the beginning of the unadjudicated period, February 23, 2019, through her date last insured of December 31, 2019.  (AR at 20.)

At step two, the ALJ determined that Warren suffers from the following medically determinable severe impairments: adjustment disorder, generalized anxiety disorder, and depression. (*Id.*)

At step three, the ALJ found that Warren's impairments did not meet or medically equal any of the listed impairments. (*Id.* at 21.)

At step four, the ALJ assessed Warren's residual functioning capacity ("RFC"). In making this assessment, the ALJ considered all of Warren's symptoms to the extent that they could reasonably be accepted as consistent with objective medical evidence and other evidence. The ALJ further considered the medical opinions and prior administrative medical

findings in accordance with the requirements of 20 C.F.R. § 404.1520(c). The ALJ concluded that, through the date last insured, Warren had the RFC to perform "a full range of work at all exertional levels" but with some nonexertional limitations. (AR at 22-23.) This finding resulted in the decision that Warren is not disabled under the Act. (*Id.* at 26.)

The ALJ's decision became the final decision of the Acting Commissioner of Social Security ("Commissioner") when the Appeals Council subsequently affirmed the decision. *See* 20 C.F.R. § 422.210(a). Warren therefore exhausted her administrative remedies and filed an appeal in this Court.   She filed a motion for summary judgment and the Commissioner filed a response. Accordingly, this case is now ripe for review under 42 U.S.C. § 405(g).

Warren raises three different arguments to argue that the ALJ erred in finding that she was not disabled: (1) the ALJ failed to consider whether Warren should be considered as "Advanced Age" under the Act; (2) the ALJ failed to reconcile or explain an alleged departure from a previous ALJ decision regarding nonexertional limitations and exertional limitations; and (3) the ALJ gave improper weight to various evidence, such as expert testimony for the plaintiff and state agency examiner reports.

### i.    Borderline Age

Warren argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider whether she should be considered as "Advanced Age" under the Act. (DE 5 at 3.) For individuals between 50 and 54 years of age, an ALJ will consider that age along with severe impairments and limited work experience "may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d). This provision does not mean that an individual closely approaching Advanced Age status (age 55 or older) automatically constitutes Advanced Age status.

5

The clerical error of defining Warren, a 54-year-old individual, as a "younger individual age 18-49" (AR at 24) in one sentence does not mean that the ALJ's decision lacked substantial evidence. This classification is not referenced at any other point in the ALJ's decision. The ALJ does, however, analyze her educational background, employment history, and RFC when considering the claimant's petition. (*Id.* at 24-25.) Warren has not shown that the ALJ relied on this clerical error, contrary to the other medical evidence and facts, to come to the ALJ's decision. Further, she failed to provide reasons for why the other factors demand the use of the Advanced Age classification.

### ii. Previous ALJ Decision

Warren also argues that the ALJ "does not reconcile or explain the departure from the previous ALJ with regard to [nonexertional] limitations and exertional limitations." (DE 5 at 3.) Warren bases this argument on the Sixth Circuit's opinions in *Drummond* and *Dennard*, which held that a subsequent ALJ is generally bound by the findings made by a previous ALJ at each step of the sequential evaluation process, unless there is new and material evidence or a showing of changed circumstances which would justify a departure. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990)). The Sixth Circuit, however, did not intend for these cases to rigidly bind an ALJ to a prior ALJ's findings in the same factual dispute.

The Sixth Circuit in *Earley v. Commissioner of Social Security* clarified the principles established in *Drummond* and *Dennard*. It established that ALJs are not strictly bound to social security determinations made by prior ALJs. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018) ("An individual may file a second application . . . for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold."). Warren argues that the ALJ

departed from the prior ALJ's findings, but the Court agrees with the Commission that this claim is factually untrue.

In reviewing the record and comparing the two ALJ decisions, the Court cannot find the alleged departure regarding nonexertional limitations and exertional limitations. Both ALJs found that Warren has an RFC to perform a full range of work at all exertional levels with some nonexertional limitations. (AR at 22-23, 103.) Both ALJs found these nonexertional limitations to include: (1) she can follow simple and details, but non-complex instructions and tasks; (2) she must avoid work with the public; (3) she can tolerate frequent interaction with co-workers; and (4) she can adapt to occasional changes in the workplace setting. (*Id.*) Accordingly, the ALJ did not violate the principles of *Drummond* and *Dennard* because the ALJ did not depart from the prior ALJ's findings.

### iii.    Improper Weight for Testimony and Evidence

Finally, Warren argues that the ALJ gave improper weight to various testimony and evidence in making the ALJ's decision to deny benefits. She points to testimony and evidence from consultative examiners, state agency examiners, Warren's treating psychiatrist, and the appointed vocational expert. (DE 5 at 3-5.) "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Upon review, the Court finds that the ALJ appropriately weighed the relevant medical opinions and evidence.

Warren claims that the ALJ didn't give appropriate weight to Dr. Zachary Sumpter's report dated October 29, 2021. (AR at 460-466.) Dr. Sumpter's report found that Warren

should be limited to "less than the full range of light work" because of balance issues and chronic back pain. (*Id.* at 460; DE 5 at 3.) However, the ALJ found that this assessment related to "complaints of subjective back pain and balance issues" was not persuasive because those limitations "[were] not adequately reflected during the period at issue expiring December 31, 2019[.]" (AR at 24.)

Warren also claims that the ALJ failed to give proper weight to state agency examiners. (DE 5 at 4.) She does not provide an explanation as to how exactly the ALJ failed to give proper weight to their medical evidence beyond this conclusory allegation. In any case, the Court agrees with the Commissioner that the state medical examiners adopted the prior ALJ's RFC finding that Warren had no exertional limitations but had mental limitations. (AR at 124-125, 136-138.)

The Commissioner correctly notes that the medical opinion of Dr. Eric Moffet, Warren's treating psychiatrist, was not presented as evidence for her petition. Instead, Warren brought forth the new evidence when she asked the Appeals Council for review of the ALJ's decision. The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). As a result, the Court will not consider Dr. Moffet's medical opinion for the purpose of this opinion.

Finally, Warren claims that the ALJ did not give proper weight to the appointed vocational expert's testimony. (DE 5 at 4-5.) Again, she does not explain how exactly the ALJ failed to give proper weight to the vocational expert's testimony; she only points to the vocational expert's testimony that a "20% off-task requirement would leave 'no jobs'." (*Id.* at 5.) The ALJ asked the vocational expert to testify about the existence of jobs in the national economy for individuals of similar age, education, work experience, and RFC to Warren. (AR at 25.) The vocational expert provided examples of jobs that Warren, despite her limitations,

could work—such as a housekeeping cleaner, silver wrapper, and photocopy machine operator. (*Id.*) Accordingly, the Court finds that the ALJ gave proper weight to testimony in the record and that the ALJ's decision was supported by substantial evidence.

## II.   Conclusion

For the above reasons, the Court **HEREBY ORDERS** that:

1.      The plaintiff's motion for leave to amend (DE 10) is DENIED;

2.      The plaintiff's motion for summary judgment (DE 5) is DENIED;

3.      The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence; and

4.      A judgment will be entered contemporaneously with this order.

This 15th day of February, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY